Henry J. Brubaker and Civilla J. Brubaker v. Commissioner.
Brubaker v. Commissioner
Docket No. 57198.
United States Tax Court
T.C. Memo 1957-186; 1957 Tax Ct. Memo LEXIS 63; 16 T.C.M. (CCH) 828; T.C.M. (RIA) 57186; September 30, 1957
*63 Held, certain advances were loans which, when they became worthless in the taxable year, constituted nonbusiness bad debts. Section 23(k)(4), Internal Revenue Code of 1939. Salvage value of certain equipment determined for purposes of loss deduction on account of loss in useful value of assets. Sydney O. Simon, Esq., for the petitioners. Paul Levin, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent *64 determined a deficiency in income tax for the calendar year 1946 in the amount of $10,936.97. The petitioners having waived one issue raised by the pleadings, the remaining issues relate to the deductibility of certain amounts as bad debts or as losses and the amount deductible as a loss in useful value of property. Findings of Fact The petitioners are husband and wife and reside in Wheaton, Illinois. They filed a joint income tax return for the calendar year 1946 with the collector for the first district of Illinois. Since the petitioner Civilla J. Brubaker is a party petitioner only because of having signed the joint return, the petitioner Henry J. Brubaker will hereinafter be referred to as the petitioner. The petitioner met Ross D. Netherton in the fall of 1944. Netherton was seeking additional finances for various business ventures which he was promoting. The petitioner advanced money to Netherton on demand notes as follows: Date
Amount
Interest
Notation on Note
2/10/45
$1,000
6%
2/10/45
1,000
6%
2/10/45
1,500
6%
Re: Commonwealth Mineral Rubber Corporation
3/25/46
750
6%
Re: Commonwealth Lumber Corp. One of the $1,000 notes of February 10, 1945, was *65 a collateral note providing for security in the form of stock in Vivid, Inc. That note was eventually satisfied through sale of the security. That note and the other two notes dated February 10, 1945, were executed by "Ross D. Netherton." The March 25, 1946 note for $750 was executed by "Ross D. Netherton, Individually and as Trustee." A receipt dated March 25, 1946, for the $750 advanced on that date was executed by "Ross D. Netherton, Individually and as trustee, and as principal organizer of said corp." and contained a further notation "This is a demand loan re Commonwealth Lumber Corp., now being organized. Understanding is that Henry J. Brubaker will receive as bonus shares of stock, equal, on basis of declared value, to amount of loan." It was the petitioner's understanding that Netherton would organize three or four corporations to engage in the manufacture of rubber, lumber, and plastics. Corporate stock was to be sold and in consideration for advancing the money, the petitioner was to receive a portion of the promotional stock at considerably reduced prices and thereby to participate in profits. The petitioner's agreement with Netherton as to the petitioner's participation *66 in those ventures was oral. Netherton died in January 1947. The businesses never reached the point where a corporate structure was set up, and therefore no stock was ever issued. The petitioner was never repaid (except in the one instance noted above) nor did he receive any return on his capital. He never sued on the notes nor made a demand on Netherton for payment of the notes which were unsecured. During 1945 and 1946 the petitioner was connected with several other ventures, including four or five wild-cat oil ventures in association with various individuals. During this period the petitioner's interests included stock or ownership in Joliet Chemicals, Ltd., Crest, Joliet Properties, Inc., Joliet Industrials, Inc., and Franklin Sanitizer Company. In their joint income tax return for the calendar year 1946 the petitioners claimed, among itemized deductions, a deduction on account of advances to Netherton in the amount of $3,385 as "Bad Debt Collection Impossible." The return does not disclose any trade or business to which the debt might be related. In the notice of deficiency the respondent determined that $135 of this amount had not been substantiated, that $3,250 of the amount *67 constituted a non-business bad debt, and hence a short-term capital loss. The respondent determined that there were other capital losses and, in the absence of capital gains, allowed a deduction of $1,000 on account of capital losses. The amounts advanced by the petitioner to Netherton constituted loans, and in 1946 when they became worthless they constituted non-business bad debts. The petitioner had participated in the organization of the Franklin Sanitizer Company which manufactured the Franklin Sanitizer dishwashers. Many dishwashers were sold until wartime restrictions forced discontinuance of manufacture about 1943 or 1944. The dies and semi-finished parts lost their value as such except for the possibility that they might be used if manufacturing should be resumed. On September 20, 1945, the petitioner purchased from J. H. Lahman, for the sum of $5,470, certain equipment consisting of dies, jigs, and parts for the manufacture of Franklin Sanitizer dishwashers. On February 15, 1946, the petitioner executed a document entitled "BILL OF SALE," which provided in substance that he would sell these same parts to Netherton and make delivery upon the giving of a promissory note *68 by Netherton in the amount of $1,000. Such amount represented the prospective value of the parts in the event of resumption of manufacture. This contemplated transaction was never carried out. Netherton died in January 1947. In October 1947, the petitioner sold the parts as scrap to the Atlas Iron & Metal Company for $22.50. In their joint income tax return for the calendar year 1946, the petitioners claimed as a deduction against ordinary income the amount of $4,470, representing the difference between the cost of the Franklin Sanitizer assets and $1,000. The total amount of the deduction was allowed by the respondent. The salvage value of the Sanitizer assets at the end of 1946 was $22.50, and in 1946 the petitioners sustained a loss of $5,447.50 on account of the worthlessness of such assets. Opinion The evidence shows that the petitioner advanced Netherton amounts at various times totaling $4,250. In each instance a demand note was given, providing for interest. In one instance involving an advance of $1,000, security was posted and the petitioner suffered no loss on that particular advance. The petitioner received no return whatever upon the remaining $3,250. The respondent *69 has characterized the losses as nonbusiness bad debts, and does not question that they became worthless in 1946. In the return there was claimed an amount of $3,385 as a bad debt, but the petitioner testified and it is claimed on brief that the advances were not truly loans but investments in ventures. The petitioners' principal claim appears to be that the amount should be allowed as a loss incurred in trade or business or in a transaction entered into for profit under the provisions of section 23(e), Internal Revenue Code of 1939. [1] Further, although the brief is not clear, the petitioners seem to also contend that the amount is deductible in full as a business bad debt under section 23(k)(1)[2] as distinguished from a non-business bad debt as defined in section 23(k)(4)[3] which is to be treated as a short-term capital loss the deductibility of which is limited as provided in section 117(d)(2). [4]
*70 While the petitioner claims that the loss was $3,385, the evidence does not establish a loss of any greater amount than $3,250. From a consideration of all the evidence, we are satisfied that the amounts advanced were intended as loans. Notes were given and interest was to be paid. It is true that in one instance the petitioner, in consideration of making the loan, was to receive a bonus of stock in a corporation to be formed, and that in consideration of his making the loans, he was to have the privilege of purchasing stock in corporations to be formed at a considerably reduced price. However, this never eventuated and we see no jurisdiction for treating the advances as anything other than loans. Accordingly, section 23(e) has no application here. Nor has the petitioner shown that the debts were business debts. An individual to be entitled to a deduction for a business bad debt must show that the loss resulting from the debt's becoming worthless bears a proximate relation to a trade or business in which he was engaged in the year in which the debt became worthless. There have been some cases which have held that loans made in promoting corporations are deductible, but those cases *71 are limited to exceptional situations where the taxpayer's activities in promoting, financing, managing, and making loans to a number of corporations have been so extensive as to constitute a business. See S. D. Ferguson, 28 T.C. - (May 23, 1957), and cases cited therein. However, here the petitioner has not adduced evidence of such extensive activity as to bring himself within the ambit of those cases. Nor is there evidence to show that the petitioner was in the business of lending money. On this issue the respondent's determination is approved. The respondent allowed the deduction of $4,470 claimed by the petitioners on their return on account of the loss in value of the Sanitizer assets. That amount represented the difference between the cost of the assets, $5,470, and $1,000, which was the amount at which in 1946 the petitioner had expected to sell the assets to Netherton. The petitioners now contend that they were in error in claiming only $4,470 and that they should have claimed the amount of $5,447.50, which is the difference between the cost of the assets and the salvage value of $22.50. The respondent does not question the deductibility of the loss but merely questions *72 the amount to be allowed, claiming that the salvage value at the end of 1946 has not been proved. However, we think that the petitioners are entitled to deduct the full amount of $5,447.50 now claimed. By the end of 1946 the contemplated transaction with Netherton had not been carried out by Netherton and the petitioner testified that in 1946 "As far as I was concerned, or as far as any prospect I had, they [the assets] were without value except that I might be able to dispose of them to somebody who might take it all." It is quite evident that the petitioner had abandoned any intention of using the assets himself or of selling them as anything other than scrap. Actually in 1947 the assets were sold as scrap for $22.50. We think that the scrap value of the assets would be substantially the same at the end of 1946 as it was when realized by the sale in 1947. We have, accordingly, found as a fact that the salvage value of these assets at the end of 1946 was $22.50. We hold that the petitioners are entitled to deduct in 1946 the amount of $5,447.50 claimed on account of the loss in value of the Sanitizer assets. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; ↩
2. Sec. 23(k)(1)
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year: or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt as defined in paragraph (4) of this subsection. * * * ↩
3. Sec. 23(k)(4)
(4) Non-business debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩
4. Sec. 117(d)(2) (d) Limitation on Capital Losses. - * * *
(2) * * * In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer or $1,000, whichever is smaller. * * *↩